# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS E. OWENS and DONNA OWENS, | ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 14-1148 |
| v. | ) ) ) | District Judge Terrence F. McVerry/ Magistrate Judge Robert C. Mitchell |
| RESIDENTIAL CREDIT SOLUTIONS, INC., | ) ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

ROBERT C. MITCHELL, United States Magistrate Judge.

### I. RECOMMENDATION

Plaintiffs, Thomas E. Owens and Donna Owens brought the present action against Defendant Residential Credit Solutions, Inc. ("RCS") on August 26, 2014. On October 20, 2014, RCS filed a motion to dismiss Plaintiffs' complaint. [ECF No. 9]. Plaintiffs responded to RCS's motion to dismiss on December 29, 2014 [ECF No. 13], and RCS submitted a reply on January 13, 2015. [ECF No. 15]. For the reasons that follow, it is respectfully recommended that RCS's motion to dismiss [ECF No. 9] be granted. It is specifically recommended that Plaintiffs' Fair Debt Collection Practices Act ("FDCPA") claim and Real Estate Settlement Procedures Act ("RESPA") claim be dismissed with prejudice and that the Court decline to exercise jurisdiction over the remaining state law claims.

### II. REPORT

a. <u>Background</u>

Plaintiffs, Thomas E. Owens and Donna Owens brought this action on August 26, 2014 alleging that Defendant, Residential Credit Solutions, Inc. ("RCS") violated various provisions

1

of the Fair Debt Collections Act ("FDCPA"), the Real Estate Settlement Procedures Act ("RESPA"), the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and that RCS breached a prior settlement agreement between Plaintiffs and RCS's predecessor in interest, JPMorgan Chase in connection with the allegedly improper servicing and application of payments made by Plaintiffs to the mortgage securing their personal residence.

Because this case involves a prior lawsuit brought against RCS and others, the Court will provide a factual background of the prior lawsuit before discussing the claims presented in the current lawsuit.

1. *Plaintiffs' 2012 Lawsuit*[1]

Plaintiffs are owners of a personal residence located in Pennsylvania and obtained a mortgage secured by the property from EMC Mortgage Corporation in or about 1996. Plaintiffs filed a Chapter 13 Bankruptcy in the Western District of Pennsylvania on or about March 30, 2006. Sometime thereafter, JPMorgan Chase Bank ("JPMorgan") became the owner and servicer of Plaintiffs' mortgage loan. On October 27, 2011, the Bankruptcy Court entered an Order that cured Plaintiffs of "any and all monetary defaults as of the payment date for which the Trustee last made a distribution, and no additional interest, law fees, or penalties [could] be assessed for time period or payments due prior to that date." United States Bankruptcy Court Order of Oct. 27, 2011, No. 06:21929. In or about July 2011, Plaintiffs allege that they resumed making monthly mortgage payments, but JPMorgan informed Plaintiffs that the mortgage payments were insufficient because they failed to account for escrow charges, and on many

---

[1] For ease of reference, the prior action, *Owens v. JPMorgan Chase Bank*, was filed in the Western District of Pennsylvania, at civil action number 2012-1081. This Court's decision on RCS's previous motion to dismiss is published as Owens v. JPMorgan Chase Bank, 2013 WL 2033149 (W.D.Pa. May 14, 2013), and the decision on motion to amend is published as Owens v. JPMorgan Chase Bank, 2013 WL 3343145 (W.D.Pa. July 2, 2013).

2

occasions, their mortgage loan payments were returned without being credited to their account. On May 1, 2012, RCS became the servicer of Plaintiffs' loan, and JPMorgan remained the owner of the loan.

Plaintiffs commenced an action in this Court against RCS and JPMorgan on July 31, 2012 claiming that, *inter alia*, RCS violated the FDCPA. *See Owens v. JPMorgan Chase*, (W.D.Pa. Civ. Act. No. 12-1081). RCS filed a motion to dismiss Plaintiffs' claims against it, which was ultimately granted. The Court found that Plaintiffs' FDCPA claim against RCS failed because Plaintiffs could not allege that their mortgage was in default when RCS became the loan servicer. Specifically, in dismissing Plaintiffs' FDCPA claim against RCS, the Court found as follows:

> [A] mortgage servicer will be considered a debt collector under the FDCPA if the mortgage was "already in default at the time the mortgage-servicer began servicing the loan." Ruff [v. America's Servicing Co.,] 2008 WL 1830182, at *5 [(W.D.Pa. April 23, 2008)]. . . . Therefore, the operative question is whether Plaintiffs' mortgage was in default on May 1, 2012, the time that RCS took over servicing Plaintiffs' loan.
>
> Plaintiffs provide only the threadbare legal conclusion that RCS is a "debt collector" as defined under the FDCPA. Plaintiffs have not alleged that their mortgage was in default at the time RCS became the loan servicer. To the contrary, Plaintiffs' bankruptcy was closed for approximately one year before RCS obtained the servicing rights, and Plaintiffs claim that once they resumed making the monthly mortgage payments in July 2011, the payments were "timely" and "in fact [Plaintiffs] made payments substantially greater than that provided for in their bankruptcy." Plaintiffs have failed to adequately allege that the mortgage was in default at the time RCS obtained the servicing rights; therefore, their claim that RCS violated the FDCPA is dismissed.

*Owens v. JPMorgan Chase Bank*, 2013 WL 2033149, at *4 (W.D.Pa. May 14, 2013). Plaintiffs thereafter filed a motion to amend their complaint, which was ultimately denied because the amendment did nothing but add "sweeping legal buzz words and conclusions[,]" and amendment

3

would be futile. *Owens v. JPMorgan Chase Bank*, 2013 WL 3343145, at *3 (W.D.Pa. July 2, 2013).

Plaintiffs and JPMorgan negotiated and entered into a settlement agreement sometime thereafter. On October 14, 2013, the parties filed a stipulation of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) and Plaintiffs dismissed its claims against JPMorgan and RCS with prejudice, which was ultimately approved by the Court.

### 2. *Plaintiffs' 2014 Lawsuit*

After the settlement agreement was entered into and the case dismissed with prejudice, Plaintiffs allege that they continued to make their monthly payments in accordance with the settlement agreement and timely made loan payments, but RCS informed Plaintiffs that they were remitting insufficient payments, because the payments did not account for "escrow shortage" which included unpaid late charges, outstanding advances/fees and an amount of $2,762.67. Additionally, Plaintiffs claim that they received foreclosure notices on their property from RCS for their alleged failure to pay the amounts RCS claim was owed.

On or about January 28, 2014, Plaintiffs sent RCS a RESPA Qualified Written Request (QWR) for information regarding the payments made on their mortgage loan. RCS responded to the QWR, however Plaintiffs allege its response was inadequate under RESPA as it failed to include certain documents sought by Plaintiffs. Plaintiffs therefore filed suit against RCS with regard to the alleged misapplication of payments and servicing of the loan after the settlement agreement. Specifically, Plaintiffs' present complaint includes claims alleging violations of the FDCPA for allegedly misapplying payments, RESPA for inadequately responding to their QWR, the UTPCPL "catch-all" provision for falsely representing the amount owed on the mortgage loan, and a contract claim alleging a breach of the settlement agreement. RCS moves to dismiss

4

the complaint in its entirety.

      b. <u>Standard of Review</u>

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the factual allegations of the complaint conceivably fail to raise, directly or inferentially, the material elements necessary to obtain relief under a legal theory of recovery. *Twombly*, 550 U.S. at 561 (citations omitted). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555). Under this standard, civil complaints "must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal quotations omitted). A court in making this determination must ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 583 (quoting *Scheuer v. Rhoads*, 416 U.S. 232, 236 (1974) (internal quotations omitted)).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may take into consideration "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993). Although a district court may not generally consider matters extraneous to pleadings when ruling on a motion to dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(6), it may consider documents <u>integral to or explicitly relied upon</u> in a complaint without converting the motion to dismiss into a motion for summary judgment. *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 (3d Cir. 2010); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added).

    c. <u>Discussion</u>

*1. Fair Debt Collection Practices Act ("FDCPA")*

Generally, RCS moves to dismiss Plaintiffs' Fair Debt Collection Practices Act ("FDCPA") claim by arguing that it is barred by the doctrines of res judicata and collateral estoppel as this Court has previously determined that Plaintiffs did not plead sufficient facts showing that RCS is a debt collector subject to the FDCPA. At the outset, Plaintiffs concede that they cannot raise any claims that RCS improperly serviced or misapplied the loan payments prior to the date of settlement, as those claims have been fully adjudicated in the 2012 lawsuit and are barred under the doctrine of res judicata. However, Plaintiffs argue that they are not barred by collateral estoppel for the conduct complained of in their current complaint, because the current claims arise out of conduct post-settlement.

RCS argues that collateral estoppel bars Plaintiffs from bringing an FDCPA claim because this issue has previously been litigated by this Court and decided in RCS's favor, namely that RCS is not a debt collector pursuant to the FDCPA. Thus, RCS argues that Plaintiffs are collaterally estopped from relitigating the FDCPA claim in this action.

While Plaintiffs admit that this issue was the same issue raised in the first lawsuit, and also concede that "the prior litigation on that matter resulted in a dismissal order for RCS[,]" they argue that the dismissal order did not result in a "judgment" for collateral estoppel to be triggered. Pls.' Op. Br. [ECF No. 13] at 3.

Where a Rule 12(b)(6) motion raises the issue of collateral estoppel, a court must consider the prior judicial opinion to determine whether issue preclusion bars a plaintiff's claims. *M & M Stone Co. v. Pa.*, 388 F.App'x 156, 162 (3d Cir. 2010) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 221 n. 3 (3d Cir. 2004)). Thus, "a prior judicial opinion constitutes a public record of which a court may take judicial notice." *Id*. On a motion to dismiss, a court may do so "only to establish the existence of the opinion, and not for the truth of the facts asserted in the opinion." *Id*. If a district court examines the transcript of the prior proceeding for fact finding purposes, this converts the motion to dismiss into one for summary judgment. *Id*. However, mere acknowledgment of a prior court's conclusions without considering the factual analysis of the court's decision does not convert a motion to dismiss into one for summary judgment. *Id*. To "disallow a court from recognizing the existence of other judicial opinions would thwart a defendant's right to raise issue preclusion in a motion to dismiss, and it would obviate the entire purpose of the doctrine." *Id*. Therefore, it is proper here to review the Court's prior decisions from the first lawsuit granting RCS's motion to dismiss, and subsequently denying Plaintiffs' motion to amend their complaint. *See Owens v. JPMorgan Chase Bank*, 2013 WL 2033149 (W.D.Pa. May 14, 2013) (decision on motion to dismiss); *Owens v. JPMorgan Chase Bank*, 2013 WL 3343145 (W.D.Pa. July 2, 2013) (decision on motion to amend complaint).

Issue preclusion, or collateral estoppel, prevents parties from relitigating issues already decided by a court. As explained by the United States Court of Appeals for the Third Circuit,

> [t]he prerequisites for the application of issue preclusion are satisfied when: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995) (quoting *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992)); *see also Parklane Hosiery Co. v.*

7

> *Shore*, 439 U.S. 322, 326 n.5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In its classic form, collateral estoppel also required "mutuality" – *i.e.*, that the parties on both sides of the current proceeding be bound by the judgment in the prior proceeding. *Parklane Hosiery*, 439 U.S. at 326-27, 99 S.Ct. 645. Under the modern doctrine of non-mutual issue preclusion however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary. . . . For defensive collateral estoppel – a form of non-mutual issue preclusion – to apply, the party to be precluded must have has a "full and fair" opportunity to litigate the issue in the first action.

*Peloro v. U.S.*, 488 F.3d 163, 174-75 (3d Cir. 2007). Simply stated, issue preclusion compels a later court to honor a decision of a matter that was actually litigated. *Concert v. Northeast Foster Care Inc.*, 2012 WL 7188850, at *11 (M.D.Pa. Oct. 18, 2012) (citing *Dici v. Commonwealth of Pa.*, 91 F.3d 542 (3d Cir. 1997)).

Here, all of the elements of collateral estoppel are met. The issue to be precluded, *i.e.*, whether RCS is subject to the FDCPA, is the same issue determined in the prior action brought by Plaintiffs against RCS. A mortgage servicer is only considered a debt collector under the FDCPA if the mortgage was in default "**at the time the mortgage-servicer began servicing the loan**." *Owens v. JPMorgan Chase Bank*, 2013 WL 2033149, at *4 (W.D.Pa. May 14, 2013) (quoting *Ruff*, 2008 WL 1830182, at *5) (emphasis added)). The present FDCPA claim brought by Plaintiffs against RCS would necessarily require a finding that the mortgage was in default when RCS began servicing the loan. This Court previously found that Plaintiffs failed to show that their mortgage was in default at the time RCS became the loan servicer, and to the contrary, Plaintiffs alleged that their bankruptcy was closed approximately a year before RCS ever became the servicer and that all of their loan payments were timely made. *Id.* Thus, this issue was actually litigated by the parties and determined by a final and valid judgment, as Plaintiffs' claim was dismissed in the previous action and thereafter Plaintiffs were denied leave to amend their

complaint. This is exactly what Plaintiffs seek to relitigate in this suit.

Plaintiffs' argument that this Court's order in the 2012 suit was not final under Federal Rule of Civil Procedure 54 as a judgment is unavailing. The Court dismissed Plaintiffs' FDCPA claim because it found that there were no facts pleaded that alleged Plaintiffs' mortgage was in default when RCS became the servicer, and then denied Plaintiffs' motion to amend their complaint as futile. These orders were final and appealable orders under Rule 54. The fact that Plaintiffs decided to settle and dismiss the case with prejudice for economic reasons instead of appealing does not change the fact that a final decision by the district court was made on the matter. If the Court were to agree with Plaintiffs, it would render meaningless every order disposing of an issue or party in action where a settlement is subsequently reached as to other issues or parties, and likewise contravene the doctrine of collateral estoppel. *See In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991) (for purposes of collateral estoppel, "final judgment [] includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.") (citations omitted).

Accordingly, it is respectfully recommended that Plaintiffs' FDCPA claim be dismissed with prejudice.

### 2. *Violation of the Real Estate Settlement Procedures Act ("RESPA")*

Plaintiffs next claim that RCS violated RESPA after it inadequately responded to a qualified written request ("QWR") sent to RCS on January 28, 2014. RESPA requires that a loan servicer respond to a borrower who makes a QWR for information regarding the loan in a timely manner. *See* 12 U.S.C. § 2605(e)(1)(A), (f). Particularly, Plaintiffs claim that RCS's response was inadequate as it failed to respond to Plaintiffs' request for information regarding any agreements to sell, transfer or otherwise negotiate Plaintiffs' loan, that history of the loan's

9

servicers, how payments were applied to the loan, loan payment history, attorney fee agreement for fees incurred in servicing the loan, escrow analysis, and requested the removal of certain late fees. 1/28/2014 Pls.' Letter to RCS [ECF No. 1-5] at 1.

RCS moves to dismiss this claim because it argues that it was not required to produce such information, and it otherwise complied with RESPA by providing Plaintiffs with their loan payment history, the notice of assignment, sale or transfer of servicing rights, a copy of the Broker Price Opinion, billing statement from January 2013 to present, the last three annual escrow account disclosure statements and a copy of the 2013 mortgage interest statement (Form 1098).[2]

RESPA requires that a federally-related mortgage servicer respond to borrower inquiries regarding the servicing of loan, referred to as a QWR. 12 U.S.C. § 2605. The QWR must be a "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that – (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicers regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). RESPA defines a "servicer" as "the person responsible for servicing of a loan[,]" and defines the term "servicing" as "any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." § 2605(i)(2), (3).

---

[2] While RCS also argues that Plaintiffs' request is not a QWR and was under no duty to respond, the Court will not discuss this argument because RCS properly responded to Plaintiffs' request.

10

After a servicer receives a QWR from a borrower, it must provide the borrower with a complete response to the inquiry. RESPA requires that the response include the following where appropriate:

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
>> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
>> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2). If a servicer fails to comply with these requirements, it can be liable to the borrower for any actual damages sustained by the borrower for its failure and any additional damages not to exceed $2,000, as the court may award, in the case of a pattern or practice of noncompliance. § 2605(f).

The Court finds that RCS adequately responded to Plaintiffs' QWR and did not violate RESPA. A loan servicer is only under a duty to provide information requested pursuant to a

QWR related to the servicing of a loan, and is not required "to answer endless interrogatories propounded by a borrower." *Golliday v. Chase Home Fin.*, LLC, 2011 WL 4352554, at *9 (W.D.Mich. Aug. 23, 2011). On March 4, 2014, RCS sent Plaintiffs, through their counsel, a letter which informed Plaintiffs it did not consider Plaintiffs' request a QWR under RESPA because the request did not provide a specific allegation of inaccurate servicing. Nonetheless, the letter provided that RCS would answer "specific questions about the account" and solve any problems, if necessary. RCS QWR Response [ECF No. 1-6] at 1. RCS also provided Plaintiffs' loan's payment history during the time which RCS was the servicer, and informed Plaintiffs that "[i]f you are questioning a specific event with respect to this account, or have a specific allegation of improper servicing, please advise us of such in a letter, along with evidence to support your claim." *Id.* Additionally, RCS provided Plaintiffs with copies of the Notice of Assignment, Sale or Transfer of Servicing Rights, the billing statements from January 2013 to present, the last three Annual Escrow Disclosure Statements, and a copy of the 2013 Mortgage Interest Statements (Form 1098). *Id.* While RCS provided in the letter that it included a copy of the Broker Price Opinion, there is no copy included therewith and it is unclear if RCS provided a copy to Plaintiffs. However, Plaintiffs have not alleged that they have tried in good faith to obtain such a copy from RCS after receipt of the response to their QWR. Additionally, RCS provided the phone number and hours for RCS Customer Service for Plaintiffs to direct their additional questions and requests for information. Therefore, the Court finds that RCS's responses to Plaintiffs' broad inquiry and request for production of certain documents did not violate RESPA. *See O'Connor v. Nantucket Bank*, 992 F.Supp.2d 24, 34-37 (D.Mass. 2014) (servicer adequately responded to QWR by providing borrower with loan history, note and mortgage, loan modification documents, appraisal and servicer contact information).

It is therefore recommended that Plaintiffs' RESPA claim be dismissed with prejudice.

### 3. *Plaintiffs' Remaining State Law Claims*

Plaintiffs' remaining claims are for a breach of the settlement agreement and for a violation of the catch-all provision of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTCPCL"), 73 P.S. § 201-2(4)(xxi), both state law claims. When a district court has "dismissed all claims over which it has original jurisdiction[,]" it may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). *See Elkadrawy v. Vangaurd Grp., Inc.*, 584 F.3d 169, 174 (3d Cir. 2009). Accordingly, it is respectfully recommended that Plaintiffs' breach of contract claim and its claims under the UTPCPL be dismissed without prejudice to reassert in state court.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant, Residential Credit Solutions' Motion to Dismiss [ECF No. 9] be granted.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules pertaining to Magistrate Judges, the parties are permitted until <u>April 6, 2015</u> to file written objections to this Report and Recommendation. Failure to do so may waive the right to appeal. Any party opposing written objections shall have fourteen days after the service of such objections to respond thereto.

Dated: March 19, 2015

Respectfully submitted,

/s Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

cc: The Honorable Terrence F. McVerry
United States District Court
Western District of Pennsylvania

*Counsel for Plaintiffs*
David A. Colecchia, Esquire

*Counsel for Defendant*
Sandhya M. Feltes, Esquire